**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Quality Oil, Inc., ) | |
| ) | |
| Plaintiff, ) | Case No.: 08-C-05006 |
| ) | |
| v. ) | Magistrate Judge Susan E. Cox |
| ) | |
| Kelley Partners, Inc. d/b/a ) | |
| The Oil Works-Elgin & ) | |
| The Oil Works-Batavia, Inc., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Quality Oil, Inc. ("Quality Oil") has supplied defendant Kelley Partners, Inc. ("Kelley Partners") with motor oil products since the early 1990s.[1] In July of 2003, Quality Oil and Kelley Partners entered into a business agreement entitled the "Product Payback Loan and Supply Agreement" (the "Supply Agreement").[2] The Supply Agreement provided that Quality Oil would loan Kelley Partners cash.[3] In return for the cash loan, Kelley Partners was to purchase a certain amount of motor oil products from Quality Oil over a five year period.[4] As Kelley Partners purchased motor oil products from Quality Oil, the cash loan to Kelley Partners would be

---

[1] Trial Trans. 5: 18-25, 6: 1-5, April 26, 2007, Ex. A of PR1. Citations to the record are made in the following format: Quality Oil's Local Rule 56.1 Statement of Facts [dkt 25] for its first summary judgment motion [dkt 22] is cited as PR1 ¶ ____; Kelley Partners' response [dkt 31] to Quality Oil's Local Rule 56.1 Statement of Facts [dkt 25] is cited as DR1 ¶ ____; Quality Oil's reply [dkt 35] to Kelley Partners' response [dkt 31] is cited as PAF1 p. ___; Quality Oil's Local Rule 56.1 Statement of Facts [dkt 29] for its summary judgment motion on defendant's counterclaim [dkt 27] is cited as PR2 ¶ ____.
[2] PR1 ¶ 5; DR1 ¶ 5; Ex. 1 of PR1.
[3] Ex. 1 ¶ 2 of PR1.
[4] Ex. 1 ¶ 4 of PR1.

1

incrementally forgiven.[5]

Kelley Partners, it seems, made purchases as required under the Supply Agreement for the next two years, through June of 2005. In July of 2005, however, Kelley Partners sold its business to a third party, thereafter ceasing all purchases of motor oil products from Quality Oil.[6] Quality Oil, in the same month, invoiced Kelley Partners for what it determined to be the unforgiven portion of the loan.[7] Kelley Partners did not pay this invoice.[8] Quality Oil subsequently sued Kelley Partners in Indiana state court for breach of contract and now, after a dismissal on jurisdictional grounds, Quality Oil has filed its claim here in federal court.[9]

Before this Court are two motions for summary judgment by Quality Oil, pursuant to Federal Rule of Civil Procedure 56(c). In its first motion, Quality Oil seeks summary judgment on its breach of contract claim against Kelley Partners, alleging $90,000 in damages plus $25,000 in interest [dkt 22]. In its second motion, Quality Oil seeks summary judgment on Kelley Partners' counterclaim for all costs, attorneys' fees, and expenses incurred by Kelley Partners as a result of litigating Quality Oil's Indiana suit [dkt 27]. For reasons stated below, this Court grants both motions in favor of Quality Oil and awards it $87,500 plus $28,000 in interest.

## PROCEDURAL HISTORY AND FACTS

We review the evidence in the record according to the summary judgment standards. Specifically, we consider the evidence in the light most favorable to the non-moving party, Kelley

---

[5] Ex. A of Ex. 1 of PR1.
[6] Trial Trans. 12: 6-11, April 26, 2007, Ex. A of PR1.
[7] Trial Trans. 16: 12-16, April 26, 2007, Ex. A of PR1.
[8] DR1 ¶¶ 12, 19.
[9] *Kelley Partners, Inc. v. Quality Oil Co., Inc.*, 886 N.E.2d 651, No. 64A05-0710-CV-598, 2008 WL 2099485, at *1 (Ind. Ct. App. May 20, 2008) (unpublished table decision).

Partners, and draw all reasonable inferences in its favor.[10]

Quality Oil is an Indiana corporation with its principle place of business in Valparaiso, Indiana.[11] It is an authorized lubricants distributor for ExxonMobil Corporation ("Mobil") and supplies Mobil branded products to various purchasers.[12] Kelley Partners is an Illinois corporation with its principal place of business in West Chicago, Illinois.[13] It is an independent operator of automotive quick lube facilities.[14] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and the parties are citizens of different states. Venue is proper pursuant to 28 U.S.C. § 1391(a).

**A. The Supply Agreement**

On July 1, 2003, Quality Oil and Kelley Partners entered into the Supply Agreement.[15] The Supply Agreement, governed by the laws of Indiana, was negotiated and signed by Ronald D. Kelley, President of Kelley Partners, and Michael A. Heinold, Chief Executive Officer of Quality Oil.[16] The Supply Agreement provides that Quality Oil loan Kelley Partners, at no charge, $150,000 (the "Loan Amount"), an amount set forth in Exhibit A of the Supply Agreement.[17] Quality Oil contends, and Kelley Partners does not dispute, that the actual amount loaned to Kelley Partners was $150,500 (not $150,000).[18] The purpose of this loan, as is stated in the Supply Agreement, was "to assist in the sale of products at Kelley Partners' business..."[19]

---

[10] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[11] PR1 ¶ 1; DR1 ¶ 1; Compl. ¶ 1.
[12] PR1 ¶ 1; DR1 ¶ 1.
[13] PR1 ¶ 2; DR1 ¶ 2.
[14] PR1 ¶ 2; DR1 ¶ 2.
[15] PR1 ¶ 5; DR1 ¶ 5; Ex. 1 of PR1.
[16] PR1 ¶¶ 6-7; DR1 ¶¶ 6-7; Ex. 1 ¶ 5 of PR1.
[17] Ex. 1 of Ex. A of PR1; Ex. 1 ¶ 2 of PR1.
[18] PR1 ¶ 11; Ex. 2 of PR1.
[19] Ex. 1 of PR1.

The Supply Agreement states that the Loan Amount term is five years and is to be amortized on a monthly basis in the following manner:

The unamortized value of the loan will be calculated using 60 months as the term.

$150,000 ÷ 60 months = $2,500.00 month

Any premature penalty will be figured by multiplying the remaining months left on contract times $2,500.00.

i.e. 36 months left on contract x $2,500.00 = $90,000[20]

In return for accepting the Loan Amount, the Supply Agreement obligated Kelley Partners to fulfill certain purchasing requirements.[21] These requirements are outlined in paragraph four of the Supply Agreement, which states:

> Purchase of Supply. [Kelley Partners] agrees to purchase from Quality Oil or its designee, at competitive prices and terms established from time to time, at least eighty-five percent (85%) of [Kelley Partners'] requirements of motor oils during the term of this Agreement. [Kelley Partners] further agrees to purchase not less than two hundred twenty-five thousand (225,000) gallons of Mobil motor oil and 225,000 Mobil branded filters within 60 months from the date hereof. Exxon/Mobil products may be used for all other products needed such as grease, gear oil, and chemicals. For the purpose of this requirement, seven and one-half (7.5) pounds of grease shall be equivalent to one (1) gallon of motor oil.[22]

The Supply Agreement has several other provisions. An "Assignment and Delegation" section states as follows:

> [Kelley Partners] agrees that its rights and duties provided hereunder shall not be assigned or delegated without the prior written consent of Quality Oil, said consent not to be unreasonably withheld. This Agreement shall be binding and inure to the successors of either party. If [Kelley Partners] transfers any location prior to completing the purchases required under Paragraph 4, the transferee(s) must continue to purchase the products from Quality Oil until the required purchases have been made. If said transferee(s) does not comply with the foregoing, [Kelley Partners] may

---

[20] Ex. A of Ex. 1 of PR1; Trial Trans. 9: 23-25, 10:1-7, April 26, 2007, Ex. A of PR1.
[21] Ex. 1 ¶ 4 of PR1.
[22] Ex. 1 ¶ 4 of PR1.

be liable under Paragraph 6 if [Kelley Partners] does not meet the requirements of Paragraph 4 with [Kelley Partners'] remaining locations(s).[23]

The Supply Agreement contains several provisions addressing termination of the Supply Agreement and the consequences thereof. It states in a section entitled "Termination" that the Supply Agreement will terminate and the loan will be forgiven "upon Kelley Partners completing the purchases as set forth in Paragraph 4 above, or the payment of the unamortized portion of the loan's value..."[24] The Supply Agreement states further, in a handwritten addition initialed by both Mr. Heinold and Mr. Kelley, that the Supply Agreement will terminate after "225,000 gallons and 225,000 filters of Exxon/Mobil is purchased or 60 months, whichever comes first."[25]

The Supply Agreement states that if Kelley Partners "shall default in the performance of any covenant hereunder, including the purchase of insufficient gallons of product, Quality Oil may declare payable the unamortized portion of the loan's value as provided on Exhibit A and [Kelley Partners] shall immediately pay said sum to Quality Oil and Quality Oil shall have all other rights and remedies available under the UCC and otherwise."[26] It states later, under a section entitled "Premature Termination Penalty," that if Kelley Partners "chooses to prematurely terminate this Agreement (i.e. before Borrower purchases 225,000 gallons under Paragraph 4), Quality Oil reserves the right to bill [Kelley Partners] Paragraph 4 above for the unamortized portion of the loan's value as provided on Exhibit A."[27]

Finally, the Supply Agreement contains a provision on the reimbursement of costs and fees

---

[23]Ex. 1 ¶ 7 of PR1.
[24]Ex. 1 ¶ 9 of PR1.
[25]Ex. 1 of PR1.
[26]Ex. 1 ¶ 5 of PR1.
[27]Ex. 1 ¶ 6 of PR1.

in the event of litigation.[28] Specifically, it states that:

> The parties agree that, in the event either party brings an action or proceedings to enforce any of the terms of this Agreement, the losing party shall be required to reimburse the prevailing party on demand all costs, attorney fees, and the expenses incurred in such a proceeding.[29]

**B. Events After The Signing Of The Supply Agreement**

In July of 2005, two years after the parties signed the Supply Agreement, Kelley Partners sold its business to a third party.[30] Kelley Partners did not assign or transfer the Supply Agreement to the new purchasers.[31] Quality Oil alleges that Kelley Partners last purchased motor oil products in the same month, on July 5, 2005.[32] Kelley Partners disagrees, stating that it last purchased products from Quality Oil on July 22, 2005.[33] Whatever the date of last purchase, the parties agree that Kelley Partners purchased no motor oil products from Quality Oil after July of 2005.

After Quality Oil learned of Kelley Partners' sale, it invoiced Kelley Partners for what it determined to be the unamortized portion of the Loan Amount.[34] Quality Oil claims that it invoiced Kelley Partners this amount because Kelley Partners sent Quality Oil a letter stating that Kelley Partners had sold its business and that all outstanding invoices should be sent to it.[35]

After Kelley Partners failed to pay the invoice, Quality Oil filed a breach of contract claim in Indiana state court on November 4, 2007.[36] Kelley Partners filed a motion to dismiss for lack of personal jurisdiction during the course of the litigation.[37] The trial court denied this motion without

---

[28] Ex. 1 ¶ 5 of PR1.
[29] Ex. 1 ¶ 5 of PR1.
[30] Trial Trans. 12: 6-11, April 26, 2007, Ex. A of PR1; PR1 ¶ 12; DR1 ¶ 12.
[31] PR1 ¶ 12; DR1 ¶ 12.
[32] PR1 ¶ 13.
[33] DR1 ¶ 12.
[34] Trial Trans. 16: 12-16, April 26, 2007, Ex. A of PR1.
[35] Pl.'s Reply Br. at 8.
[36] *Kelley Partners, Inc.*, 2008 WL 2099485, at *1.
[37] *Id.*

a hearing.[38] A bench trial was held and on September 10, 2007, the trial court determined that Indiana had personal jurisdiction over Kelley Partners, and determined that Kelley Partners had breached the Supply Agreement.[39]

Kelley Partners appealed the trial court's decision solely on the issue of whether Indiana had personal jurisdiction over Kelley Partners.[40] On May 20, 2008, the Court of Appeals of Indiana held that it did not have personal jurisdiction over Kelley Partners, noting that:

> Kelley Partners does not have the minimum contacts required to establish personal jurisdiction. Therefore, the trial court erred in its determination that Indiana had personal jurisdiction over Kelley Partners, and Kelley Partners' motion to dismiss should have been granted.[41]

Quality Oil subsequently filed the instant action on September 3, 2008 [dkt 1].

## STANDARD OF REVIEW

To prevail on a motion for summary judgment, the movant must show, through pleadings, depositions, and affidavits on file, if any, that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.[42] A motion is appropriately granted if no reasonable jury could find for the non-moving party.[43] The moving party is not required to disprove the opponent's case but, rather, must establish a lack of evidentiary support for the non-moving party's position.[44] This Court will not weigh the evidence and will draw all inferences in favor of the non-moving party.[45]

---

[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.* at *4.
[42] FED. R. CIV. P. 56(c); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (*citing Stop–N–Go of Madison, Inc. v. Uno–Ven Co.*, 184 F.3d 672, 676 (7th Cir.1999)).
[43] *Raymond*, 442 F.3d at 608 (*citing Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir.2003)).
[44] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[45] *Anderson*, 477 U.S. at 255.

ANALYSIS

This Court, recognizing that Kelley Partners challenges many of Quality Oil's factual contentions, will first address Kelley Partners' response to Quality Oil's Local Rule 56.1 Statement of Facts. We will then address Quality Oil's summary judgment motion on its breach of contract claim and, finally, Quality Oil's summary judgment motion on Kelley Partners' counterclaim. The parties agree that Indiana law governs the Supply Agreement and, thus, is applicable here.[46]

**A. Local Rule 56.1 Statement Of Facts.**

This Court recognizes that Kelley Partners disputes many of the facts alleged in Quality Oil's Local Rule 56.1 Statement of Facts. But many of Kelley Partners' responses to Quality Oil's Local Rule 56.1 Statement of Facts are actually legal conclusions as opposed to factual contentions.[47] It is for the Court, not the parties, to determine questions of law and these responses do not create a genuine factual issue for trial.[48] This Court also notes that a factual dispute must be material to prevent summary judgment.[49] A factual dispute is only material when it might affect the outcome of a suit under governing law.[50] Many of the factual disputes herein, including the parties' disagreement about the date of Kelley Partners' last purchase of products from Quality Oil, will not affect the outcome of this suit and are, therefore, immaterial.[51]

---

[46] PR1 ¶ 7; DR1 ¶ 7.
[47] *See Noble Roman's Pizza, Inc. v. Pizza Boxes, Inc.*, 835 N.E.2d 1094, 1098 (Ind. Ct. App. 2005) (noting that construction of a written contract is generally a question of law for the trial court for which summary judgment is particularly appropriate).
[48] *See id.* at 1098 (*citing Rogier v. American Testing and Eng'g Corp.*, 734 N.E.2d 606, 613 (Ind. Ct. App. 2000), trans. denied).
[49] *Anderson*, 477 U.S. at 248.
[50] *Id.*
[51] *Id.*

Furthermore, when disputing facts or alleging additional facts, the non-moving party must allege specific facts that create a genuine issue for trial.[52] It may not rely on vague, conclusory allegations.[53] Many of Kelley Partners' factual allegations, including at least two of its additional factual statements, are vague allegations and, therefore, do not create a genuine issue of fact for trial.[54] For example, Kelley Partners' assertions that Quality Oil "did not offer competitive prices" and that Quality Oil "refused to deal with Kelley" are insufficiently specific to create a genuine issue of material fact.[55] With this in mind, we begin our analysis.

**B. Count I - Breach Of Contract**

As noted, in its motion for summary judgment on its claim for breach of contract, Quality Oil argues that Kelley Partners did not fulfill its purchasing requirements under the Supply Agreement. It also argues that Kelley Partners failed to assign the Supply Agreement after selling its business to a third party. Quality Oil claims that, by failing to fulfill its purchasing requirements and failing to assign the Supply Agreement to a third party, the unamortized Loan Amount became due.

Kelley Partners argues that Quality Oil did not perform its duties under the Supply Agreement and is, therefore, barred from winning its breach of contract claim. Specifically, Kelley Partners argues that Quality Oil breached the Supply Agreement by prematurely invoicing Kelley Partners $110,250 on July 22, 2005 and that Quality Oil has not demonstrated that it offered

---

[52]*Gabrielle M. v. Ill. Sch. Dist.*, 315 F.3d 817, 822 (7th Cir. 2003) (noting that, in order to withstand summary judgment, the non-movant must allege specific facts creating a genuine issue for trial and may not rely on vague, conclusory allegations) (*citing* FED. R. CIV. P. 56(e); *Hadley v. County of DuPage*, 715 F.2d 1238, 1243 (7th Cir. 1983)).
[53]*Gabrielle M.*, 315 F.3d at 822 (citations omitted).
[54]*See id.* (citations omitted).
[55]*See id.* (citations omitted) (noting that, in a sexual harassment suit, student plaintiff cannot avoid summary judgment by asserting general allegations that another student "bothered" her by doing "nasty stuff").

products at competitive prices and terms. Kelley Partners also argues that Quality Oil has no claim against it because the Supply Agreement terminated, under its own terms, after sixty months passed in July of 2008.

Under Indiana law, the construction of a contract is a question of law for the court to determine.[56] When determining the meaning of a contract, the court's goal should be to ascertain and effectuate the intentions of the parties.[57] The agreement should be read as a whole and the court should construe the agreement so as to harmonize all of its provisions and as not to render any terms ineffective or meaningless.[58] Where one construction of a contract would make it extraordinary and another, equally consistent with the language, would make it reasonable, just, and fair, the latter construction must prevail.[59] Parties to a contract should receive the benefit of their bargains, but not more or less than the contract proscribes.[60]

**1. Kelley Partners' Obligations Under the Supply Agreement**

The Supply Agreement required Kelley Partners to purchase either 250,000 gallons of motor oil and 250,000 filters within a sixty month period or to purchase eighty-five percent of its oil product requirements over a sixty month period. The Court derives this construction from paragraph

---

[56]*Village Commons, LLC v. Marion County Prosecutor's Office*, 882 N.E.2d 210, 215 (Ind. Ct. App. 2005) (*citing Boonville Convalescent Ctr., Inc. v. Cloverleaf Healthcare Servs.*, 834 N.E.2d 1116, 1121 (Ind. Ct. App. 2005), reh'g denied, trans. denied)).

[57]*Village Commons, LLC*, 882 N.E.2d at 215 (*citing Boonville Convalescent Ctr., Inc.*, 834 N.E.2d at 1121, reh'g denied, trans. denied));

[58]*Johnson v. Dawson*, 856 N.E.2d 769, 773 (Ind. Ct. App. 2006) (*citing City of Lawrenceburg v. Milestone Contractors, L.P.*, 809 N.E.2d 879, 883 (Ind. Ct. App. 2004), trans. denied).

[59]*Teitge v. Remy Const. Co., Inc.*, 526 N.E.2d 1008, 1012 (Ind. Ct. App. 1988) (*citing Thomas v. Hennes*, 135 N.E. 392, 394 (Ind. Ct. App. 1922)).

[60]*General Motors Corp v. Sheets*, 818 N.E.2d 49, 54 (Ind. App. 2004) (*citing Brandeis Machinery & Supply Co., LLC v. Capitol Crane Rental, Inc.*, 765 N.E.2d 173, 177 (Ind. Ct. App. 2002)).

four of the Supply Agreement and the handwritten addition to the Supply Agreement initialed by Mr. Kelley and Mr. Heinold.[61] The second purchasing requirement option for Kelley Partners - purchasing eighty-five percent of its oil products over a sixty month period - assumed that Kelley Partners would make, at a minimum, some purchases from Quality Oil. But Kelley Partners is asking the Court to read the Supply Agreement to mean that it had to either: (1) purchase 250,000 gallons of motor oil and 250,000 filters within a sixty month period; or (2) wait sixty months until the contract term ran out without purchasing any motor oil products. It would, however, be extraordinary and unjust to construe the Supply Agreement in that way.[62] Such a construction would entitle Kelley Partners to opt to purchase no oil products from Quality Oil while retaining the Loan Amount. Construing the Supply Agreement in this way would not effectuate the intention of the parties because Quality Oil would have loaned money to Kelley Partners for no consideration in return.[63]

Additionally, the Supply Agreement required Kelley Partners to assign its duties to a third party should it sell its business or, in the alternative, be subject to a premature termination penalty.[64] The Supply Agreement specifically states that, in the event Kelley Partners transfers its business prior to completing required purchases under paragraph four, the transferee must continue to purchase motor oil products until the required purchases are completed.[65] If the transferee does not complete the required purchases, the Supply Agreement states, Kelley partners "may be liable under

---

[61] Ex. 1 ¶ 4 of PR1.
[62] *See Teitge v. Remy Const. Co., Inc.*, 526 N.E.2d at 1012 (*citing Thomas*, 135 N.E. at 394) (noting that where one construction of a contract would make it unusual and extraordinary, but another, equally consistent with the language, would make it reasonable, just, and fair, the latter construction must prevail).
[63] *See General Motors Corp*, 818 N.E.2d at 54 (*citing Brandeis Machinery & Supply Co., LLC*, 765 N.E.2d at 177) (noting that one of the broad "remedial goals" of the Uniform Commercial Code is that the aggrieved party be put in as good a position as if the other party had fully performed, but not in a better position).
[64] Ex. 1 ¶¶ 6-7 of PR1.
[65] Ex. 1 ¶ 7 of PR1.

Paragraph 6 if [Kelley Partners] does not meet the requirements of Paragraph 4 with Borrower's remaining locations(s)."[66] Paragraph six states that Kelley Partners is liable for the unamortized portion of the loan should it terminate the Supply Agreement prematurely.[67]

Considering the construction above, Kelley Partners breached the Supply Agreement. Kelley Partners admits to purchasing less than 250,000 gallons of motor oil and 250,000 filters.[68] Additionally, the undisputed facts state that Kelley Partners did not purchase any products from Quality Oil after July of 2005.[69] Therefore, Kelley Partners did not satisfy its purchasing requirements under the Supply Agreement. Kelley Partners also sold its business without assigning its duties to the transferee.[70] We find, therefore, that Kelley Partners is liable for the unamortized portion of the loan.

**2. Quality Oil's Obligations Under the Supply Agreement**

We next address whether Quality Oil failed to fulfill its obligations under the Supply Agreement. As is stated above, Kelley Partners argues that Quality Oil breached the Supply Agreement by prematurely invoicing Kelley Partners $110,250 on July 22, 2005, and by not offering products at competitive prices and terms. Quality Oil argues that it was justified in invoicing Kelley Partners under the doctrine of anticipatory repudiation and also argues that Kelley Partners' claim that it did not offer products at competitive prices is insufficiently specific to create a genuine issue of fact.

---

[66]Ex. 1 ¶ 7 of PR1.
[67]Ex. 1 ¶ 6 of PR1.
[68]PR1 ¶ 13; DR1 ¶ 13.
[69]DR1 ¶ 12.
[70]DR1 ¶ 12.

Indiana law recognizes the doctrine of anticipatory repudiation.[71] Under this doctrine, a party to litigation may resort immediately to a remedy for breach when another party repudiates a contract with respect to performance not yet due.[72] Repudiation, however, must be positive, absolute, and unconditional to be treated as an anticipatory breach because the doctrine represents a harsh remedy.[73]

Here, Kelley Partners unequivocally repudiated the Supply Agreement.[74] It did so by selling its business to a third party, failing to purchase products from Quality Oil after July of 2005, and failing to assign its duties to the transferee.[75] Quality Oil, therefore, had the right to resort to seeking remedies.[76] Additionally, this Court notes that, in sending the invoice, Quality Oil was simply responding to a letter sent from Kelley Partners, which requested that all outstanding invoices be sent to it.[77] This does not amount to a breach under the provisions of the Supply Agreement.

Quality Oil also did not breach the Supply Agreement, as Kelley Partners alleges, by failing to offer oil products at competitive prices and terms. As is stated above, this allegation is insufficiently specific to amount to a legitimate issue of fact.[78] Kelley Partners does not allege

---

[71] *Jay County Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 692 N.E.2d 905, 910 (Ind. Ct. App. 1998).

[72] *Id.* at 910.

[73] *Angelone v. Chang*, 761 N.E.2d 426, 429 (Ind. Ct. App. 2001) (noting that a mere request to be released from a contract cannot act as an anticipatory breach) (*citing Jay County Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 692 N.E.2d 905, 910 (Ind. Ct. App. 1998); *Mullis v. Brennan*, 716 N.E.2d 58, 64 (Ind. Ct. App.1999)).

[74] *See Angelone*, 761 N.E.2d at 429 (*citing Jay County Rural Elec. Membership Corp.*, 692 N.E.2d at 910; *Mullis*, 716 N.E.2d at 64).

[75] PR1 ¶ 12; DR1 ¶ 12.

[76] *See Angelone*, 761 N.E.2d at 429 (*citing Jay County Rural Elec. Membership Corp.*, 692 N.E.2d at 910; *Mullis*, 716 N.E.2d at 64).

[77] Pl.'s Reply Br. at 8.

[78] *See Gabrielle M.*, 315 F.3d at 822 (stating that in order to withstand summary judgment, the non-movant must allege specific facts creating a genuine issue for trial and may not rely on vague, conclusory allegations) (*citing* FED. R. CIV. P. 56(e); *Hadley*, 715 F.2d at 1243; *see also Hadley v. Du Page County*, 715 F.2d 1238, 1243 (7th Cir. 1983) (noting that general factual statements are of no advantage to the plaintiff and that mere allegations are not sufficient in supporting a factual claim).

whether Quality Oil's prices or terms, or both, were uncompetitive. It does not allege in detail which third party suppliers were more competitive than Quality Oil or, with any specificity, to what degree they were more competitive than Quality Oil. Without more, Kelley Partners' allegations that Quality Oil did not offer products at competitive prices cannot prevent summary judgment.[79]

We also hold that Kelley Partners' contention that the Supply Agreement terminated on its own terms in July of 2008 is without merit. Kelley Partners urges the Court to read the Supply Agreement so that it would terminate after sixty months without any post-July 2005 purchasing requirements from Kelley Partners. We have already addressed this argument and determined that such a reading would render ineffective a number the Supply Agreements provisions, including several references to Kelley Partners' purchasing requirements contained in paragraph four.[80] Kelley Partners is correct that, when reading it alone, the handwritten, initialed portion of the Supply Agreement seems to indicate that Kelley Partners can wait sixty months and allow the Supply Agreement to expire.[81] Contracts in Indiana, however, are to be read as a whole.[82] When reading the handwritten portion with paragraph four and other sections referencing termination, the Supply Agreement does not allow Kelley Partners to wait out the term of the Supply Agreement without making additional purchases.[83]

### 3. Quality Oil's Damages

---

[79] *See Gabrielle M.*, 315 F.3d at 822 (*citing* FED. R. CIV. P. 56(e); *Hadley*, 715 F.2d at 1243); *see also Hadley*, 715 F.2d at 1243.
[80] *See Johnson*, 856 N.E.2d at 773 (*citing City of Lawrenceburg*, 809 N.E.2d at 883, trans. denied) (noting that an agreement should be read as a whole and the court should construe the agreement so as to harmonize all of its provisions and as not to render any terms ineffective or meaningless).
[81] Ex. 1 of PR1.
[82] *Johnson*, 856 N.E.2d at 773 (*citing City of Lawrenceburg*, 809 N.E.2d at 883, trans. denied).
[83] *See Johnson*, 856 N.E.2d at 773 (*citing City of Lawrenceburg*, 809 N.E.2d at 883, trans. denied) (stating that a court is to construe contractual provisions so as to harmonize the agreement).

Pursuant to the terms of the Supply Agreement, this Court orders Kelley Partners to pay Quality Oil $87,500, the unamortized portion of the Loan Amount. Quality Oil argues that the unamortized portion of the Loan Amount is $90,000, not $87,500. We find, however, that Kelley Partners performed its duties under the Supply Agreement through July of 2005 because it purchased motor oil products during that month.[84] Therefore, when calculating the unamortized portion of the Loan Amount, pursuant to Exhibit A of the Supply Agreement, Kelley Partners is only responsible for thirty-five months, August 2005 through June 2008. At a rate of $2,500 amortized per month, this amounts to damages of $87,500.

Quality Oil also seeks interest on damages resulting from Kelley Partners' breach of the Supply Agreement. Indiana law states that an award of prejudgment interest in a breach of contract action is warranted "if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable."[85] An award of prejudgment interest is founded upon the theory that the defendant has deprived plaintiff of the use of its money and that plaintiff cannot be fully compensated for the loss suffered without it.[86] The test for determining whether prejudgment interest is appropriate is "'whether the damages are complete and may be ascertained as of a particular time.'"[87] Here, damages are complete and easily calculated. The Supply Agreement specifies how they are to be calculated.[88] Additionally, damages arose at a particular time, namely,

---

[84] PR1 ¶ 13; DR1 ¶ 13.
[85] *Olcott Intern. & Co., Inc. v. Micro Data Base Sys.*, 793 N.E.2d 1063, 1078 (Ind. Ct. App. 2003) (*citing Noble Roman's, Inc. v. Ward*, 760 N.E.2d 1132, 1140 (Ind. Ct. App. 2002)).
[86] *Bank One, Nat'l Assoc. v. Surber*, 899 N.E.2d 693, 705 (Ind. Ct. App. 2009) (*citing Crawford County Cmty Sch. Corp. v. Enlow*, 734 N.E.2d 685, 692 (Ind. Ct. App. 2000)).
[87] *Olcott Intern. & Co., Inc.*, 793 N.E.2d at 1078 (*quoting Ward*, 760 N.E.2d at 1140); *see also See Fackler*, 891 N.E.2d at 1098 FN4 (*citing Olcott Intern. & Co., Inc.*, 793 N.E.2d at 1079 (noting that an award of prejudgment interest is warranted if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable).
[88] *See Olcott Intern. & Co., Inc.*, 793 N.E.2d at 1078-79 (holding that plaintiff's damages are easily calculated).

the first full month after Kelley Partners made its last purchase from Quality Oil.[89] In Indiana, interest on forbearance of money, when not set by the parties in a contract, is set by statute at eight per cent per annum.[90] Calculated at that rate over four years, from August 2005 to date, Kelley Partners is to pay Quality Oil $28,000 in interest.

**C. Kelley Partners' Counterclaim**

Quality Oil moves for summary judgment on Kelley Partners' counterclaim, in which Kelley Partners claims that Quality Oil should pay all costs, attorneys' fees, and expenses incurred by Kelley Partners during the Indiana suit. Quality Oil argues that it is entitled to judgment on this counterclaim because Kelley Partners is not a prevailing party, as required by the fees provision in the Supply Agreement. Quality Oil argues that, under Indiana law, a party is a prevailing party only when it receives a judgment and, since Kelley Partners never received a judgment in the Indiana action, fees are not warranted. Kelley Partners, in contrast, claims that it is entitled to approximately $25,000 in fees and costs because it prevailed in Indiana state court when the appellate court reversed the trial court on jurisdictional grounds.[91]

As a general rule, parties to litigation in Indiana are responsible for paying their own attorney fees.[92] Responsibility for attorney fees may be shifted to another party under Indiana law if a private contract states that one party pay the fees of the other party.[93] Here, the Supply Agreement states that

---

[89] *See id.* (holding that plaintiff's damages arose at a particular time).
[90] *See Bank One, Nat'l Assoc.*, 899 N.E.2d at 705; IND. CODE § 24-4.6-1-102 (2006).
[91] DR1 ¶ 20.
[92] *See Kikkert v. Krumm*, 474 N.E.2d 503, 504-05 (Ind. 1985); *See Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008).
[93] *See, e.g., Kikkert*, 474 N.E.2d at 504-05; *Reuille*, 888 N.E.2d at 771.

16

the prevailing party shall be reimbursed for all costs, attorney fees, and expenses incurred in proceedings to enforce any terms of the Supply Agreement.[94]

The term "prevailing party," however, is not defined under the Supply Agreement. Where a term is not defined by a contract, a court must determine the definition for the parties.[95] In defining the term "prevailing party," this court recognizes that the goal of contract interpretation is to ascertain and give effect to the parties' intent as manifested by the language of the contract.[96] If the language is clear and unambiguous, it must be given its plain and ordinary meaning.[97]

The Court will first look to Black's Law Dictionary to determine the meaning of prevailing party, as Indiana courts have done in the past.[98] Black's Law Dictionary defines the term "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded."[99] Indiana courts have defined the term "prevailing party" similarly for the purposes of fee provisions. The Supreme Court of Indiana recently held that, in the absence of further definition by the contract, a contract with a fees provision produces fees only when "one party or the other wins a judgment."[100] More specifically, the court noted that a party is a prevailing party when a trial on the merits is conducted and a judgment is entered in its favor.[101] A final judgment, under Indiana law, is defined as a court decision where a final determination of the rights of the parties is made on issues raised at litigation, leaving no further questions to be adjudicated in regard to those issues.[102]

---

[94] Ex. 1 ¶ 5 of PR1.
[95] *See Reuille*, 888 N.E.2d at 771.
[96] *See id.* at 771 (*citing First Fed. Sav. Bank of Ind. v. Key Mkts., Inc.*, 559 N.E.2d 600 (Ind. 1990)).
[97] *See Reuille*, 888 N.E.2d at 771 (*citing Cabanaw v. Cabanaw*, 648 N.E.2d 694, 697 (Ind. Ct. App.1995)).
[98] *Id.*
[99] Black's Law Dictionary (8th ed. 2004).
[100] *See Reuille*, 888 N.E.2d at 771.
[101] *See id.* at 771-772.
[102] *See Von Behren v. Von Behren*, 251 N.E.2d 35, 37 (Ind. 1969) (*citing Greathouse et al. v. McKinney*, 44 N.E.2d 344 (Ind. 1942); *Zumpfe et al. v. Piccadilly Realty Co.*, 13 N.E.2d 715, 15 (Ind. 1932); *Home Electric Light and Power Co. v. Globe Tissue Paper Co.*, 44 N.E. 191 (Ind. 1896)).

Other Indiana courts have also defined "prevailing party." An Indiana court held that a party may be considered a prevailing party without obtaining a favorable final judgment so long as that party prevailed in some other way, perhaps by way of consent decree.[103] Specifically, that court noted the importance of obtaining some sort of relief on the merits of the claim in attaining prevailing party status.[104] Other Indiana courts, under a variety of factual scenarios, have held that a party should not be considered a prevailing party where a judgment was not entered.[105]

Here, Kelley Partners is not a prevailing party because it did not receive a judgment in its favor. The dismissal by the Court of Appeals of Indiana does not constitute a judgment in Kelley Partners' favor for several reasons. First, the ruling did not dispense with the merits of the suit and it did not determine the rights of the parties.[106] Kelley Partners did not receive any relief when the appellate court ruled. Rather, the appellate court simply forced Quality Oil to initiate the action in a different venue.

Second, Indiana courts have indicated that a court decision made without proper personal jurisdiction is void and is, therefore, not actually a judgment.[107] The Supreme Court of Indiana has held that "a judgment rendered without personal jurisdiction over an indispensable party is void as to that party."[108] This statement indicates that judgments by Indiana courts where one party is not

---

[103] *See Ind. Bd. Of Public Welfare v. Pines*, 622 N.E.2d 935, 946 (Ind. 1993).
[104] *See id.* (*citing Farrar v. Hobby*, 506 U.S. 103, 111 (1992)).
[105] *See Heritage House of Salem, Inc. v. Bailey*, 652 N.E.2d 69, 79–80 (Ind. Ct. App. 1995) (noting that plaintiff is not a prevailing party where it obtained a preliminary injunction but where judgment ultimately was rendered for the defendant); *State Wide Aluminum, Inc. v. Postle Distribs., Inc.*, 626 N.E.2d 511, 516–17 (Ind. Ct. App. 1993) (stating that State Wide Aluminum, Inc. is not a prevailing party under Indiana law because it did not receive a judgment); *State ex rel. Prosser v. Ind. Waste Sys., Inc.*, 603 N.E.2d 181, 189 (Ind. Ct. App. 1992) (finding that a favorable ruling on a motion is not a judgment allowing the recovery of costs as a prevailing party); *Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d at 772 (holding that a party receiving a favorable settlement is not a prevailing party).
[106] *See Von Behren v. Von Behren*, 251 N.E.2d at 37 (citations omitted) (noting that a final judgment is defined as a court decision where a final determination of the rights of the parties is made).
[107] *See Stidham v. Welchel*, 698 N.E.2d 1152, 1157 (Ind. 1998).
[108] *See id.*

subject to personal jurisdiction, should not be considered valid, final judgments. Third, as is indicated above, a party receiving a favorable ruling on a motion is not considered a prevailing party under Indiana law.[109] Here, the Indiana appellate court simply reversed the trial court's ruling on Kelley Partners' motion to dismiss for lack of personal jurisdiction.[110] By definition, then, Kelley Partners is not a prevailing party and fees are not merited.

## CONCLUSION

For the reasons set forth above, the Court grants both Quality Oil's motion for summary judgment on the breach of contract claim [dkt 22] and motion for summary judgment on Kelley Partners' counterclaim [dkt 27]. This Court, thus, awards Quality Oil $115,500 in damages.

**IT IS SO ORDERED**

**ENTERED: August 14, 2009**　　　　　_____

　　　　　　　　　　　　　　　　　　　**Susan E. Cox**
　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

---

[109] *See State ex rel. Prosser*, 603 N.E.2d at 189.
[110] *Kelley Partners, Inc.*, 2008 WL 2099485 at *4.